IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., | |
| Plaintiff, | Memorandum of Points and Authorities in Support of Motion to Compel Document Production Pursuant to Subpoena Served on the Colorado State University in N.D. Cal Case No. 3:16-cv-00236 |
| vs. | |
| THE CENTER FOR MEDICAL PROGRESS, et al., | |
| Defendants. | Fed. R. Civ. P. 45(d)(2)(B)(i) |

Defendant the Center for Medical Progress ("CMP") hereby moves this Court for an order compelling Non-Party Colorado State University ("CSU") to produce documents responsive to CMP's subpoena.  Counsel for CSU and CMP have been in discussion regarding CSU's production in response to the subpoena.  However, there remain outstanding disputes related to whether CSU has improperly withheld documents based on blanket objections, whether CSU has properly searched for and produced responsive documents, and whether CSU has improperly designated the few documents it has produced as "Attorney Eyes Only."  While CSU has produced a few documents in response to the subpoena, it has failed to produce a single e-mail or correspondence document in its responses.  CSU has failed to respond to CMP's concerns over the lack of e-mails and its improper confidentiality designation.

While CMP hopes to continue informal discussions to resolve the remaining disputes, CSU's delay in producing the responsive documents has necessitated the Court's intervention and assistance.  Additionally, a deadline for filing discovery motions, set for January 14, 2019, in the underlying case pending in the Northern District of California, has necessitated the filing of this motion.

CMP seeks an Order from the Court (1) declaring CSU's objections overruled or waived, (2) compelling CSU to meet and confer with CMP's counsel to develop a proper search term list to properly search for documents responsive to the subpoena, and (3) compelling CSU to remove its confidentiality designations on documents produced to CMP.

**BACKGROUND**

The underlying action in the Northern District of California, from which this third-party

document subpoena emanates, concerns generally whether the Defendants (CMP and various individual defendants) allegedly "smeared" (defamed) Plaintiffs Planned Parenthood Federation of America and 10 Planned Parenthood affiliates. *See generally*, Declaration of Paul Jonna, Exh. 1, Docket ("Dkt.") 59, Plaintiffs' First Amended Complaint ("FAC"). Plaintiffs' complaint alleges 15 different claims ranging from federal Civil RICO to state claims and seeks millions of dollars in damages. *Id.* The complaint alleges Defendants wrongfully asserted the Plaintiffs were illegally selling fetal tissue for profit. *Id.* In their complaint, Plaintiffs allege that they have "never engaged in—or agreed to engage in—any unlawful or improper activity," and "Planned Parenthood affiliates who have facilitated fetal tissue donation programs have done so in full compliance with all applicable federal and state law." Exh. 1, Dkt. 59, FAC, at ¶¶ 45, 94. Plaintiffs allege their injuries were caused by the Defendants' "fraudulent and defamatory campaign" and that "[t]his action is brought . . . to recover damages for the ongoing harm to Planned Parenthood emanating from the video smear campaign." *Id.* at ¶¶ 12, 113; *cf. id.* at ¶ 63. Plaintiffs have emphasized that most if not all of their damages ultimately spring from being "smeared" by Defendants. *Id.* at ¶ 113.

Defendants' primary defense is that their undercover investigation truthfully reported evidence showing Plaintiffs engaged in a number of illegal activities, including the trafficking in fetal body parts for a profit to various organizations. Declaration of Paul Jonna, Exh. 3, Answer, Aff Def. 26, 27, 28, 39, 40.

CMP issued a third-party subpoena to CSU. Declaration of Paul Jonna, Exh. 2. The document requests at issue seek information that is relevant to a *critical* factual dispute at the heart of the underlying case: whether, and the extent to which, the Plaintiffs engaged in illegal acts. Did, as the Plaintiffs allege, the Defendants engage in a "smear campaign" by falsely claiming that the Plaintiffs violated the law, when in reality the Plaintiffs have fully complied with the law? Or did the Plaintiffs actually violate the law, as the Defendants contend?

Substantial evidence indicates the Plaintiffs violated the law. Two congressional committees engaged in year-long investigations, and both referred various Plaintiffs for criminal prosecution, including for: (1) selling fetal tissue for profit; (2) violating HIPAA; (3) violating IRB regulations; and (4) intentionally destroying documents. *See* SELECT INVESTIGATIVE PANEL OF THE ENERGY & COMMERCE COMM., U.S. H.R., FINAL REP., 37-70, 124-33, 137-86 (2016);[1] MAJ. STAFF OF S. COMM. ON THE JUD., 114TH CONG., HUM. FETAL TISSUE RES.: CONTEXT AND CONTROVERSY

---

[1] https://archives-energycommerce.house.gov/sites/republicans.energycommerce.house.gov/files/documents/Select_Investigative_Panel_Final_Report.pdf

114-27, at 39-42 (Comm. Print. 2016).[2]

CMP had reason to believe Plaintiff Planned of the Rocky Mountains ("PPRM") had a contract with CSU, under which CSU would receive fetal body parts from PPRM. CMP also had knowledge regarding the PPRM doctor's willingness to engage in negotiations for the sale of human (fetal) cadaverous tissue for profit in violation of federal law. CMP therefore knew that CSU would have possession of responsive documents.

Discovery concerning the extent to which the Plaintiffs violated various laws in their fetal tissue procurement practices is *highly* relevant in the underlying case. The document requests at issue here are tailored precisely to uncover information about the partnership between the Plaintiffs and CSU. If the requested discovery indicates the Plaintiffs schemed to illegally profit from the sale of fetal tissue, or engaged in other illegal activity due to the profit incentive, then the Plaintiffs' allegation of a "smear campaign," through which CMP allegedly proximately caused extensive damages to law-abiding entities, completely falls apart. Such evidence is also relevant to impeach any Plaintiffs that falsely claimed they have fully complied with the law, and would bolster a public policy defense since the enforcement of contracts to conceal illegal activities is highly disfavored. Given the centrality of this factual dispute to this case, and the fact that the Plaintiffs seek *millions* of dollars in damages—which could potentially be trebled under RICO—the requested discovery is clearly "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

## PROCEDURAL HISTORY

On July 20, 2017, CMP propounded a document subpoena on CSU. Declaration of Paul Jonna, Exh. 1. In a letter dated August 15, 2017, Jason L. Johnson, General Counsel for the Colorado State University System, responded with eleven (11) categories of objections to the subpoena. Exh. 4. CSU indicated a willingness to produce documents, but did not produce any documents with their responsive letter.

On or around November 6, 2018, counsel acting on behalf of CMP called Mr. Johnson to inquire as to whether documents would be produced pursuant to the subpoena. Affidavit of Emily J. Wischnowski, at ¶ 5. CMP's counsel also sent an e-mail to Mr. Johnson the following day inquiring as to why CSU did not produce a single document in response to the subpoena. *Id.* at ¶ 6. Thereafter, counsel spoke on the phone and CSU agreed to produce the documents responsive

---

[2] https://www.grassley.senate.gov/sites/default/files/judiciary/upload/22920%20-%20FTR.pdf

to the subpoena. *Id.* at ¶ 7. CMP's counsel requested that if any documents were being withheld based on CSU's objections, a privilege log be produced. *Id.*.

On November 30, 2018, Mr. Johnson e-mailed CMP's counsel a letter stating that CSU was not waiving their prior objections but was providing documents in CSU's possession that are responsive to the subpoena. *Id.* at ¶ 9. Mr. Johnson stated that the documents being produced were designated as "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" pursuant to the Protective Order issued in the case pending in the Northern District of California. *Id.*. CSU produced several assorted documents. *Id.* at ¶ 9. The total production was only fourteen (14) pages. CSU failed to produce a single e-mail or correspondence in its production set.

Following receipt of the production set from CSU, CMP's counsel e-mailed Mr. Johnson, requesting the designation of the documents be changed from "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL". *Id.* at ¶ 10. CMP's counsel also requested clarification on the search process and results relating to the lack of e-mails or other correspondence with PPRM. *Id.*. Mr. Johnson did not respond to counsel's e-mail. *Id.* at ¶ 11. On January 8, 2019, CMP counsel again reached out to Mr. Johnson asking for a formal meet-and-confer phone call to discuss her concerns with CSU's production set. *Id.* at ¶ 12. CMP counsel left a message with Mr. Johnson's office requesting a phone call with Mr. Johnson. *Id.*. As of the date of this filing, CMP had not received a response from Mr. Johnson or his office. *Id.* at ¶ 13.

Pursuant to D.C.COLO.LCivR 7.1, counsel for CMP has made reasonable good faith efforts to confer with CSU's counsel to resolve the remaining disputes related to the subpoena.

**STANDARD**

"A subpoena [to a non-party] may command … production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45 (d)(2)(B)(i). "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45 (g).

## ARGUMENT

CMP's subpoena requests are highly relevant to the underlying case in the Northern District of California. CSU has insufficiently responded, asserting eleven (11) blanket objections to the subpoena. CSU has failed to produce a single e-mail or privilege log despite CMP's requests. CSU has also improperly designated the few documents it has produced as "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY", depriving CMP and the other Defendants the opportunity to view the documents. For these reasons, more fully discussed below, CMP is asking the Court to (1) declare CSU's objections waived, (2) to compel CSU to meet and confer with CMP's counsel to develop a proper search term list to properly search for documents responsive to the subpoena, and (3) to compel CSU to remove its confidentiality designations on documents produced to CMP.

1. **CMP's Requests Are Relevant and Discoverable.**

In its subpoena, CMP generally seeks documents concerning the Plaintiffs' fetal tissue procurement programs and whether the Plaintiffs were illegally selling fetal tissue for profit (requests nos. 1-9, 14-19), documents concerning whether the Plaintiffs were illegally modifying their abortion procedures to facilitate the procurement of fetal tissue (request no. 10), documents concerning CMP's Cal. Pen. Code § 633.5 defense that the Plaintiffs were committing violent felonies against born-alive infants (requests nos. 11-12, 20-22), and documents relating to the Defendants (requests nos. 23-25). The requests read as follows:

1. REQUEST FOR PRODUCTION NO. 1: All DOCUMENTS or electronically stored information REGARDING the costs to PLANNED PARENTHOOD of transporting, processing, preserving, engaging in quality control, and storing fetal tissue, specimens, products of conception, and/or fetal remains from January 1, 2006, through the present.

2. REQUEST FOR PRODUCTION NO. 2: All DOCUMENTS or electronically stored information REGARDING the costs to PLANNED PARENTHOOD in facilitating the donation of fetal tissue, specimens, products of conception, and/or fetal remains from January 1, 2006, through the present.

3. REQUEST FOR PRODUCTION NO. 3: All annual profit and loss statements from PLANNED PARENTHOOD from January 1, 2006, through the present.

4. REQUEST FOR PRODUCTION NO. 4: All DOCUMENTS or electronically stored information relating or referring to any financial transactions involving aborted fetal tissue and/or the procurement or donation of aborted fetal tissue between YOU and PLANNED PARENTHOOD.

5. REQUEST FOR PRODUCTION NO. 5: All contracts or agreements, whether or not executed, between YOU and PLANNED PARENTHOOD concerning fetal tissue,

    specimens, products of conception, and/or fetal remains from January 1, 2006, through the present.

6. REQUEST FOR PRODUCTION NO. 6: All DOCUMENTS or electronically stored information from January 1, 2006, through the present between YOU and PLANNED PARENTHOOD relating to orders or requests or responses to orders or requests for fetal body parts, fetal tissue, specimens, products of conception, and/or fetal remains.

7. REQUEST FOR PRODUCTION NO. 7: All DOCUMENTS or electronically stored information between YOU and PLANNED PARENTHOOD concerning any per specimen compensation for any fetal body parts, fetal tissue, specimens, products of conception, and/or fetal remains from January 1, 2006, to present.

8. REQUEST FOR PRODUCTION NO. 8: All DOCUMENTS or electronically stored information between YOU and PLANNED PARENTHOOD indicating or related to monies received in connection with transactions involving aborted fetal tissue and/or the procurement or donation of aborted fetal tissue.

9. REQUEST FOR PRODUCTION NO. 9: All DOCUMENTS or electronically stored information that reflect invoices, accounts payable, and/or funds sent to PLANNED PARENTHOOD or other entities in relation to the providing of fetal tissue, specimens, products of conception, and/or fetal remains, from January 1, 2006, through the present.

10. REQUEST FOR PRODUCTION NO. 10: All DOCUMENTS or electronically stored information regarding PLANNED PARENTHOOD modifying abortion procedures in order to facilitate the donation of fetal tissue.

11. REQUEST FOR PRODUCTION NO. 11: All DOCUMENTS or electronically stored information regarding inadvertent live births at PLANNED PARENTHOOD facilities in the course of or following abortion procedures.

12. REQUEST FOR PRODUCTION NO. 12: All DOCUMENTS or electronically stored information regarding the procurement of fetal tissue from patients following inadvertent live births at PLANNED PARENTHOOD facilities in the course of, or following, abortion procedures.

13. REQUEST FOR PRODUCTION NO. 13: All DOCUMENTS or electronically stored information between YOU and PLANNED PARENTHOOD concerning fetal tissue, specimens, products of conception, and/or fetal remains.

14. REQUEST FOR PRODUCTION NO. 14: All DOCUMENTS or electronically stored information concerning any attempt by YOU to collaborate with, or be approved by, PLANNED PARENTHOOD for fetal tissue procurement.

15. REQUEST FOR PRODUCTION NO. 15: All DOCUMENTS exchanged with Planned Parenthood Federation of America regarding fetal tissue procurement.

16. <u>REQUEST FOR PRODUCTION NO. 16:</u> All DOCUMENTS concerning the pricing of fetal tissue transferred by, donated by, or received by, YOU involving PLANNED PARENTHOOD.

17. <u>REQUEST FOR PRODUCTION NO. 17:</u> All DOCUMENTS concerning the cost to YOU of obtaining fetal tissue from PLANNED PARENTHOOD.

18. <u>REQUEST FOR PRODUCTION NO. 18:</u> All DOCUMENTS concerning the purchase or attempted purchase from or by YOU of fetal tissue that originated with PLANNED PARENTHOOD.

19. <u>REQUEST FOR PRODUCTION NO. 19:</u> All DOCUMENTS that reflect accounts payable and/or funds received concerning the sale or transfer by YOU of fetal tissue that originated with PLANNED PARENTHOOD.

20. <u>REQUEST FOR PRODUCTION NO. 20:</u> All DOCUMENTS that reflect invoices for fetal tissue at and over 17.6 weeks gestation obtained directly or indirectly from PLANNED PARENTHOOD.

21. <u>REQUEST FOR PRODUCTION NO. 21:</u> All DOCUMENTS that reflect invoices for "complete POC" or complete fetal cadavers obtained directly or indirectly from PLANNED PARENTHOOD.

22. <u>REQUEST FOR PRODUCTION NO. 22:</u> All DOCUMENTS that reflect invoices for cardiac/heart fetal tissue or neural/brain fetal tissue obtained directly or indirectly from PLANNED PARENTHOOD.

23. <u>REQUEST FOR PRODUCTION NO. 23:</u> All DOCUMENTS concerning The Center for Medical Progress.

24. <u>REQUEST FOR PRODUCTION NO. 24:</u> All DOCUMENTS concerning David Daleiden or Robert Sarkis.

25. <u>REQUEST FOR PRODUCTION NO. 25:</u> All DOCUMENTS concerning BioMax Procurement Services.

Exh. 1.

The sought documents all relate to CMP's public statements about the Plaintiffs engaging in specific illegal activities (selling fetal tissue for profit; changing abortion procedures; procuring tissue from born alive infants), which the Plaintiffs assert proximately caused their alleged damages and whose veracity CMP asserts establishes its affirmative defenses. Given the broad scope of discovery, the requested documents and information would tend "to make more or less probable a fact that is of consequence in determining the action," *Planned Parenthood*, 2018 WL 2441518, at *6 n. 7, by testing the Plaintiffs' claim that they fully complied with all laws.

7

Whether the Plaintiffs did, or did not, illegally scheme to profit from fetal tissue sales, alter abortions to secure more fetal tissue, or kill infants born alive, is highly relevant to: (1) the veracity of the many assertions in the Complaint (expressly incorporated into every cause of action) that CMP falsely accused the Plaintiffs of engaging in wrongdoing; (2) defenses premised upon the illegality of the Plaintiffs' acts, such as unclean hands, public policy, and Cal. Penal Code § 633.5; and (3) the credibility of the Plaintiffs and CMP considering the many statements that CMP has made about the Plaintiffs' wrongdoing.

### 2. CSU's Blanket Objections are Improper.

CSU's initial response listed eleven (11) broad objections, including that the requests were unduly overbroad and burdensome, vague, ambiguous, or unduly overbroad. Boilerplate and general objections are always improper. *See Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335, fn. 4 (N.D.Ill. 2001) ("As courts have repeatedly pointed out, blanket objections are patently improper. This fact should no longer be news to a responding party.") (citations and quotation marks omitted).

CSU has also failed to present any valid explanation why the subpoena requests are an undue burden on CSU. In the non-party subpoena context, "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an 'undue burden' depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (quotation marks omitted). Also, generally to substantiate a generic burden objection, the opposing party must detail the burden "in terms of time [and] money." *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, No. ML 08-1980 MMM (FMOx), 2010 WL 4942645, at *6 (C.D. Cal. July 29, 2010) (ordering production: "defendant acknowledges that it has not quantified its burden but argues that providing such quantification would be an additional burden that defendant would have to shoulder.") (quotation marks, brackets, and ellipses omitted); *see also Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (same).

CSU has not provided any specific information regarding the objections it asserted or

whether documents are being withheld based on the objections. To the extent CSU is withholding documents based on its vague and unsupported objections, CSU should be required to produce those documents or produce a privilege log if withholding based on privilege.

### 3. CSU has Inadequately Responded to the Subpoena.

CSU has produced a total of 14 pages of documents. CSU suggests that it has produced all the responsive documents in its possession, yet ***CSU has failed to produce a single e-mail*** or other correspondence with PPRM. Counsel for CMP is willing to work with CSU to develop a proper and reasonable search term list so that CSU can properly conduct a search for e-mail and other electronic documents responsive to the subpoena requests. It is truly unfathomable that in this era of technology not a single e-mail was sent between PPRM and CSU. It is clear that CSU has not conducted a proper search for the documents.

### 4. CSU's Confidentiality Designations are Improper.

In response to CMP's subpoena, CSU produced 14 pages of documents and labeled them "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" pursuant to the Protective Order entered by the United States District Court of the Northern District of California. This designation prohibits CMP's counsel from showing the documents to the Defendants, its clients. This designation is improper and unfairly oppressive to CMP and the other Defendants.

In the Protective Order in the underlying case, "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" designation is reserved for discovery material "that is extremely confidential and/or sensitive in nature, including highly sensitive personal privacy information, disclosure of which to another Party or Non-Party the Producing Party reasonably believes is likely to cause a substantial risk of serious injury that could not be avoided by less restrictive means." 2.6 (emphasis added). This definition includes discovery material the National Abortion Federation and/or Plaintiffs produce that may contain information that reveals private identifying information such as names, security code words, social security numbers, birthdates, etc.

CSU has provided no explanation for why it believes disclosure of material responsive to the subpoena would warrant such a designation. CSU has made no allegations that it believes the disclosure of responsive documents (at least some of which CSU has already provided to the media) would create a substantial risk of serious injury. Defendants are entitled to view the responsive documents from CSU. To withhold these highly relevant documents from Defendants, the most knowledgeable persons about their own defenses, is highly prejudicial and oppressive.

## CONCLUSION

The documents sought by CMP's document subpoenas are unequivocally relevant and key to CMP's defense in the underlying litigation. CSU has inadequately responded to the subpoena, has refused to conduct any discussion regarding the search process used, and improperly designated the 14 pages it did produce so that Defendants cannot view the production set.

CMP seeks an Order from the Court: (1) declaring CSU's objections overruled or waived, (2) compelling CSU to meet and confer with CMP's counsel to develop a proper search term list to properly search for documents responsive to the subpoena, and (3) compelling CSU to remove its confidentiality designations on documents produced to CMP.

By: /s/ Theresa Lynn Sidebotham
Theresa Lynn Sidebotham, *Atty. Reg. #*
Telios Law PLLC
19925 Monument Hill Rd.
P.O. Box 3488
Monument, CO 80132
(855) 748-4201

and

Matthew F. Heffron, NE Bar No. 19228
  (*pending application, Dist. Colorado*)
THOMAS MORE SOCIETY
  *and* Brown & Brown, LLC
501 Scoular Building
2027 Dodge Street
Omaha, Nebraska 68102
(402) 346-5010
ATTORNEYS FOR CMP and DAVID DALEIDEN

**CERTIFICATE OF SERVICE**

I certify that on January 14, 2019, a true and accurate copy of this document was mailed by First Class mail to:

Jason L. Johnson
General Counsel
Colorado State University System
01 Administration Building-0006 Campus Delivery
Fort Collins, CO 80523-0006

Notice of Service to parties in underlying case to be sent separately.

*s/ Theresa Lynn Sidebotham*
   Theresa Lynn Sidebotham